IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JANIE MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:11cv170-MHT |
| ) | (WO) |
| METROPOLITAN LIFE INS. CO., *et al.*, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

I.  Introduction

In this ERISA action filed pursuant to 29 U.S.C. § 1132(a)(1), Janie Moore seeks benefits allegedly due her under a group dependent benefits life insurance Plan.  Moore contends that Paul Moore was her common-law husband, and she is due benefits after his death.  After investigation Met Life concluded that no common-law marriage existed and denied eligibility for dependent life insurance benefits.  That decision led to this lawsuit.

Presently before the court are a few discovery motions:

1.  Moore's Motion to Compel Production and Identification of Manuals, Guidelines and Other Documents Governing the Manner in Which Met Life Makes Claims Decisions for Her Plan. (doc. # 20)

2.  Moore's Motion to Compel Production of Documents and Information Relevant under Supreme Court Precedent Concerning Met Life's Conflict of Interest. (doc. # 21)

3.  Moore's Motion to Compel Production of Documents Detailing or Explaining

Met Life's Organizational Structure in Which the Persons Who Were Involved in Her Claim Pursuant to Plan Worked. (doc. # 22)

    4.  Moore's Motion to Compel Production of Application Documents for Her Plan and Documents Evidencing Other Plans or Coverages Provided to Her. (doc. # 23)

    5.  Moore's Motion to Strike the Defendants' Objections to Producing Privilege Logs and Compel Their Overdue Production (doc. # 24)

    6.  Moore's Motion to Compel Southern Company to Produce Documents Exchanged Between it and Met Life Concerning the Claim at Issue. (doc. # 25)

    7.  Moore's Motion to Compel Southern Company to Respond to Her Request for Admission on the Basis Met Life Informed Her Was the Reason Her Claim Was Denied. (doc. # 26)

    8.  Metropolitan Life Ins. Co.'s Motion for Protective Order Regarding Deposition of Marie Ruffing Noticed by Plaintiff. (doc. # 34)

    The court heard oral argument on these motions and has carefully considered the arguments and the briefs of the parties.  At its heart, the central issue raised by most of these motions is the scope of discovery in an ERISA case in which there exists a conflict of interest.  Before delving into that question, several of these motions can be disposed of rather quickly.

## II.  Moore's Motions Related to the Southern Company

    There is no dispute that Metropolitan Life Insurance Company (Met Life) is both

the Plan administrator and also funds the Plan.  It appears from the language of the Plan that Met Life has discretionary authority to determine eligibility for benefits under the Plan.  Moore's motions to compel Southern Company to produce documents exchanged between it and Met Life concerning the claim at issue, (doc. # 25) and to compel Southern Company to respond to her request for admission on the basis Met Life informed her was the reason her claim was denied (doc. # 26), therefore, are due to be denied.  FED.R.CIV.P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . "  The information sought by Moore in these two motions to compel is plainly not relevant to any claim she makes because those claims focus solely on the decision of the Plan administrator, Met Life.  At oral argument Moore's counsel conceded as much.

### III.  Privilege Logs

Moore's motion to strike the defendants' objections to producing privilege logs and compel their overdue production, (doc. # 24) is due to be granted.  In its responses to Moore's discovery requests, Met Life made the following objection:

> MetLife objects to each discovery request to the extent that it may be interpreted to call for the production of documents prepared in anticipation of litigation pursuant to Fed. R. Civ. P. 26 or privileged documents or information, including documents or information protected by the attorney client privilege or the "work product" doctrine.  MetLife will provide a privilege log if privileged documents exist that pre-date the filing of this lawsuit.

This objection is improper.  It is wholly inconsistent with the requirements of FED

R. CIV. P. 26(b)(5)(A) which provides as follows:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (I) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Met Life's blanket objection which fails to specify what information is privileged or protected is simply not an express assertion of the claim within the meaning of the Rule. "A blanket claim of privilege which does not specify what information is protected will not suffice." *United States v. White*, 970 F.2d 328, 334 (7th Cir.1992). *See also In re Grand Jury Subpoena*, 831 F.2d at 226 ("Blanket assertions of [the attorney-client] privilege before a district court are usually unacceptable.").

Moreover, FED R. CIV. P. 26(b)(5)(A)(ii) does not say that the so-called privilege log can be provided at a later date. By its terms, the Rule contemplates that the log will be provided at the time the privilege or protection is asserted so that the claim can be assessed.

At oral argument, the court noted the deficiencies and informed Met Life's counsel that the court would order production of a log in compliance with FED R. CIV. P. 26(b)(5)(A)(ii) within seven days. The court will so order.

4

IV.  Scope of Discovery in an ERISA Action

In *Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1138 (11th Cir.2004), the Eleventh Circuit established a sequential, six-step analysis to guide review of a plan administrator's benefits determination: (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision;  (2) If the administrator's decision in fact is "de novo wrong," then determine whether the administrator was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision; (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard);  (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest;  (5) If there is no conflict, then end the inquiry and affirm the decision; and (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.[1]

After the Supreme Court's decision in *Met. Life Ins. Co. v. Glenn,* 554 U.S. 105

---

[1] This analytical approach derives from *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, (1989), in which the Court established three distinct standards for reviewing an ERISA plan administrator's decision: (1) de novo where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion and the administrator has a conflict of interest.

(2008), the Eleventh Circuit modified the sixth step, eliminating the heightened standard of review. *Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1360 (11th Cir.2008). Now, a conflict of interest, which arises when the administrator both determines eligibility under the plan and pays the claim from its own general assets, is merely "a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Id.* This requires an individualized inquiry into the conflict of interest in a particular case, because a benefits decision can relate to conflicts in many different ways and the conflicts "will themselves vary in kind and in degree of seriousness." *Glenn* 554 U.S. at 116. *See also Capone v. Aetna Life Ins. Co.,* 592 F.3d 1189, 1195 (11th Cir.2010).

In *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556 (11th Cir.1990), the court held that "that when a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest." *Id.* at 1566. However, after *Glenn*, the Eleventh Circuit concluded that "the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Doyle*, 542 F.3d at 1360.

This leads the court, then, to consider what is the proper scope of discovery in this case. The answer to this question is first informed by the following discussion in *Glenn*.

> The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. *See Langbein, supra*, at 1317–1321 (detailing such a history for one large insurer). It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits. See Herzel & Colling, The Chinese Wall and Conflict of Interest in Banks, 34 Bus. Law 73, 114 (1978) (recommending interdepartmental information walls to reduce bank conflicts); Brief for Blue Cross and Blue Shield Association as Amicus Curiae 15 (suggesting that insurers have incentives to reward claims processors for their accuracy); cf. generally J. Mashaw, Bureaucratic Justice (1983) (discussing internal controls as a sound method of producing administrative accuracy).

*Glenn*, 554 U.S. at 117–118.

Most recently, Judge Hopkins in the Northern District of Alabama, noting the existence of a divergence of opinion among the circuits[2] about the scope of discovery in ERISA cases after *Glenn*, concluded that

> the plaintiff should not be limited to the Plan's assertion that any such conflict did not affect the claim decision. Without such discovery, the existence of a conflict of interest would be analyzed in a vacuum, which would be at odds with *Glenn's* holding that "... the significance of the (conflict of interest) factor will depend upon the circumstances of the particular case." *Glenn*, *supra*, 554 U.S. at 108 (emphasis supplied). It would be reasonable to permit Harvey to attempt to ascertain the circumstances surrounding the conflict of interest  . . .

---

[2] *See* Elizabeth J. Bondurant, *Standard of Review and Discovery after Glenn: the Effect of the Glenn Standard of Review on the Role of Discovery in Cases Involving Conflicts of Interest*, 77 Def. Couns. J. 120 (2010) (Discussing varied approaches of the circuits).

7

*Harvey v. Standard Ins. Co.*, ---- F.Supp.2d -----, -----, 2011 WL 2050752, *5 (N.D.Ala.,2011).

In short, the court concludes that it is appropriate to permit discovery related to the conflict of interest because if it is necessary for the court to consider that factor, the court must weigh the varying circumstances of its existence and extent. *See Self v. The Prudential Ins. Co. of America,* ---- F.Supp.2d, ----, 2010 WL 996503 (N.D.Fla. 2010). As will be reflected below, this does not mean unlimited discovery. With that established, the court will turn to the remaining individual motions to compel.

1. Moore's motion to compel production and identification of manuals, guidelines and other documents governing the manner in which met life makes claims decisions for her plan. (doc. # 20) The undisputed facts show that Met Life first denied Moore's claim based on Wisconsin law but later retreated from that position agreeing that Alabama law governed the resolution of this claim.  Met Life has agreed to produce, subject to a protective order, any claim guidelines relating to common law marriage.  However, the court agrees that some more limited discovery is appropriate, especially in light of Met Life's statement that it "did not specifically rely on any other guidelines or manuals . . ." That statement, of course, begs that question about what Met Life generally relied upon. Accordingly, the court will order that Met Life produce all written procedures, rules, guidelines or other governing documents which applied in any way to the resolution of Moore's claim.  The court will also order the parties to reach agreement on a protective order.

2. Moore's motion to compel production of documents detailing or explaining Met Life's organizational structure in which the persons who were involved in her claim pursuant to plan worked (doc. # 22) is due to be denied. Moore argues that neither it nor the court should "take Met Life's word for it" when Met Life states that its claims personnel are separated from it financial affairs personnel. Moore speculates that it is possible other departments do have influence over the claims process. First, Met Life's responses were made under oath and do constitute evidence upon which the parties and the court can rely. Secondly, documents showing the organizational structure of Met Life are not related to the questions for which Moore seeks answers. In other words, the formal structure of an organization will not show whether there exists influences between and among divisions within an organization. As noted at oral argument, the court will permit the deposition of Marie Ruffing by telephone, and this subject is a legitimate area of inquiry.

3. Moore's motion to compel production of application documents for her plan and documents evidencing other plans or coverages provided to her (doc. # 23) is due to be denied. Met Life has produced the claim file. Other than requesting these documents, Moore makes no showing as to how they are relevant to her claim in this case.

4. Moore's motion to compel production of documents and information relevant under supreme court precedent concerning Met Life's conflict of interest (doc. # 21) has several distinct aspects which must be discussed separately. Moore's requests for

9

production 5 through 7 relate to documents showing financial bonuses, incentives, stock options, honors, awards, remuneration (whether financial or not) or any other type of compensation or program for "company personnel working with the departments directly responsible for the adjudication or assessment of the Plaintiff's claims," for persons who supervised employees who handle the Plan's claims, and for employees who handled the plaintiff's claims.

Obviously, the requests for this information relate to the conflict of interest issue in this case. In response, Met Life stated the following:

> MetLife's Claims Associates, including both Claims Specialists and Appeals Specialists, are evaluated base upon the quality, accuracy, and timeliness of their claims evaluations and determinations. MetLife assesses whether Claims Associates evaluated and determined claims pursuant to the applicable plan documents. MetLife does not consider the number of claims that resulted in either an adverse or non-adverse determination during the performance reviews of its Claims Associates, and the number of claims that resulted in either an adverse or non-adverse determination does not affect the performance review or compensation decisions relating to that employee. MetLife's Claims Associates do not receive benefits, bonuses, commissions, promotions, or any other incentives, financial or otherwise, based on the number of claims that, based on their claims evaluations and determinations, are or are not payable. MetLife evaluates each claim based upon the particular plan provisions and information before the administrator at the time of the determination in accordance with its fiduciary obligations. Claims Associates do not have access to reserve information, and do not report up to Finance Department employees. The compensation of Claims Associates is not related to whether claims that individual reviewed resulted in adverse or non-adverse determinations. As such, the requested information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Moore's motion to compel recites all of Met Life's boilerplate objections but fails

to point out the specific response set forth above. Given Met Life's response, any information about financial awards or incentives would not be relevant to the conflict of interest issue unless it could be shown that the award or incentive was in some way tied to denial of claims. The court will order some very limited discovery and permit Moore to make inquiry about this issue during the Ruffing deposition.

The remaining issues relate to interrogatories which ask for the identity of and information about each person who was involved in determining plaintiff's claim and also information about any awards, bonuses or recognition received for job performance. The court understands that Met Life has already produced the identity of each person who worked on the plaintiff's claim. Notwithstanding the previous statement by Met Life about awards, bonuses or other recognition, the court notes that Met Life's statements were general. Thus, the court will require Met Life to respond specifically as set forth below. In all other respects the motion to compel will be denied.

5. Met Life's motion for protective order regarding deposition of Marie Ruffing noticed by plaintiff (doc. # 34) is due to be denied. The court has concluded that the plaintiff should be allowed to make an individualized inquiry into the conflict of interest in a particular case, because a benefits decision can relate to conflicts in many different ways and the conflicts "will themselves vary in kind and in degree of seriousness." *Glenn* 554 U.S. at 116. As indicated at oral argument, the deposition shall be limited to two hours and shall be taken by telephone or other appropriate electronic means.

11

In its response to the motion to compel Met Life argues that no discovery should take place until the court first decides whether Met Life's denial of benefits decision was right. *See Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1138 (11th Cir.2004) *as modified by Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1360 (11th Cir.2008). There is no need for the court to address this issue which is framed as a question of law. The parties have had two conferences with the District Judge assigned to this case. Following those conferences, the court entered an order *with the agreement of the parties* that allowed the parties "until July 5, 2011, to complete discovery and the depositions of all persons whose testimony will be made part of the evidentiary record." Met Life will not now be allowed to protest discovery.

## V.  Conclusion

In accordance with the foregoing opinion, it is

ORDERED as follows:

1. Moore's motions to compel Southern Company to produce documents exchanged between it and Met Life concerning the claim at issue, (doc. # 25) and to compel Southern Company to respond to her request for admission on the basis Met Life informed her was the reason her claim was denied (doc. # 26) are DENIED.

2. Moore's motion to strike the defendants' objections to producing privilege logs and compel their overdue production, (doc. # 24) is GRANTED. By separate order entered prior to the date on which this opinion and order were entered, the court ordered

Met Life to serve a privilege log on Moore on or before June 27, 2011.

3. Moore's motion to compel production and identification of manuals, guidelines and other documents governing the manner in which met life makes claims decisions for her plan. (doc. # 20) is GRANTED to the extent that Met Life shall produce all written procedures, rules, guidelines or other governing documents which applied in any way to the resolution of Moore's claim.

4. Moore's motion to compel production of documents detailing or explaining met life's organizational structure in which the persons who were involved in her claim pursuant to plan worked (doc. # 22) is DENIED.

5. Moore's motion to compel production of application documents for her plan and documents evidencing other plans or coverages provided to her (doc. # 23) is DENIED.

6. Moore's motion to compel production of documents and information relevant under supreme court precedent concerning Met Life's conflict of interest (doc. # 21) is GRANTED as follows:

   a. With respect to Moore's requests for production 5 through 7 Met Life shall produce any document which on its face shows that there exists any connection between claim denial and financial bonuses, incentives, stock options, honors, awards, remuneration (whether financial or not) or any other type of compensation or program. Moore is granted leave to inquire about this issue during the deposition of Ruffing.

b. With respect to interrogatories 3 and 4, Met Life shall answer with specificity with respect to each employee who working on plaintiff's claim and state whether any of those employees have ever received any awards, bonuses or recognition based on the nature of any decision they made on any claim for benefits.

c. In all other respects, the plaintiff's motion to compel is DENIED.

It is further

ORDERED that Met Life shall comply with the provisions of this order requiring responses or production on or before July 1, 2011. it is further

ORDERED that on or before 2:00 p.m., July 1, 2011, the parties shall agree upon and submit to the court a proposed protective order covering the documents which must be produced pursuant to this order.

Done this 27th day of June, 2011.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE