IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JANIE MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:11cv170-MHT |
| | ) | (WO) |
| METROPOLITAN LIFE INS. CO., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Presently before the court is the plaintiff's motion to compel production of documents identified in Met Life's privilege log. (doc. # 39) At issue are four documents which Met Life claims are protected from disclosure by the attorney-client privilege or protected from disclosure by the work-product doctrine. Moore contends that these documents are not protected by virtue of the so-called fiduciary exception to the privilege. Met Life rebuts that contention arguing that "[o]nce a beneficiary like Moore becomes an adversary, the fiduciary's and the beneficiary's interests diverge; thereafter, the fiduciary may consult counsel without fear that the privilege may be pierced by the beneficiary."

Pursuant to the order of the court, Met Life produced the disputed documents for an *in camera* review. Based on the court's review of the motion, Met Life's opposition to the motion and the disputed documents, the court concludes that the motion to compel production of the four documents should be granted.

Case 2:11-cv-00170-MHT-CSC Document 54 Filed 07/13/11 Page 2 of 11

Under the common law fiduciary exception, the attorney-client privilege[1] does not apply with respect to communications made to certain fiduciaries who obtain legal advice in the execution of their fiduciary obligations. The Supreme Court recently discussed the nature of the exception but held that it did not apply to the federal government as a trustee of Indian funds. *United States v. Jicarilla Apache Nation*, ___U.S. ___, 131 S.Ct. 2313 (2011). Numerous circuit courts of appeal have applied the fiduciary exception with respect to ERISA fiduciaries.[2] *See Solis v. The Food Employers Labor Relations Ass'n.*, — F.3d ----, 2011 WL 1663597 (4th Cir. May 4, 2011) (collecting cases).

What about the Eleventh Circuit? In *Garner v. Wolfinbarger*, 430 F.2d 1093, 1101 (5th Cir. 1970), the court did determine that shareholders suing their corporation may discover communications otherwise protected by the attorney-client privilege upon a

---

[1]Pursuant to FED. R. EVID. 501, "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law," *United States v. Zolin*, 491 U.S. 554, 562. The attorney-client privilege applies to "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Miccosukee Tribe of Indians of Florida v. United States,* 516 F.3d 1235, 1262 (11th Cir. 2008). The Supreme Court has broadly construed this privilege in support of the underlying policy "that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir.1991). To determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the communication was "(1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential." *United States v. Bell,* 776 F.2d 965, 971 (11th Cir.1985).

[2]The Third Circuit refused to apply the fiduciary exception to an ERISA fiduciary in *Wachtel v. Health Net, Inc.*, 482 F3d 225 (3rd Cir. 2007), but it has not yet determined if the exception is available in the circuit.

2

showing of good cause.  *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994) is sometimes cited as holding that the attorney-client privilege does not apply with respect to communications made to certain fiduciaries who obtain legal advice in the execution of their fiduciary obligations.  *Cox* concerned the question of whether the *Garner* doctrine applied to a union's assertion of the attorney-client privilege against its members, but the *Cox* decision does not contain any holding about the extent of the fiduciary exception in other  contexts.  "Because we hold that even if the *Garner* doctrine applies, it does not support an exception to the attorney-client privilege under the facts of this case, we need not decide whether the *Garner* doctrine does apply to disputes between a union and its members."  *Cox*, 17 F.3d at 1415.  However, there is no Eleventh Circuit opinion applying the fiduciary exception in an ERISA case.  That, however, is no reason to not apply the exception where it applies,[3] and to that question the court now turns.

> *Solis* provides a succinct explanation of the exception.
>
> Analogizing the ERISA fiduciary's role to the role of the trustee at common law, these courts have relied on one of two related rationales. Applying the reasoning of the Fifth Circuit in *Garner*, some courts have concluded that the ERISA fiduciary's duty to act in the exclusive interest of beneficiaries supersedes the fiduciary's right to assert attorney-client privilege. Other courts, however, have reasoned that the ERISA fiduciary, as a representative of the beneficiaries, is not the real client in obtaining advice

---

[3]As one district court put it, "Defendant maintains that this Court should not apply the fiduciary exception here because the Eleventh Circuit has never applied the fiduciary exception in the context of an ERISA case. Defendant provides no legal or factual explanation of why this Court should not apply this doctrine, however. Indeed, application of this doctrine to ERISA actions finds significant support in federal case law."  *Maltby v. Absolut Spirits Co., Inc.*, — F.Supp.2d ----, 2009 WL 800142, *4 (S.D. Fla March 25, 2009).

regarding plan administration and "thus never enjoyed the privilege in the first place." Under either rationale, "where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries."

*Solis,* ___ F.3d at ___, 2011 WL 1663597, 4 (citations and footnote omitted) (quoting *United States v. Mett*, 178 F.3d 1058, 1064 (9th Cir. 1999).

Thus, a fiduciary of an ERISA plan "must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan." *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2nd Cir.1997). The exact nature of what constitutes plan administration may be difficult to discern. For example, the Supreme Court has held that "making intentional representations about the future of plan benefits in . . . [certain] context[s] is an act of plan administration." *Varity Corp. v. Howe,* 516 U.S. 489, 505 (1996). But, decisions relating to a plan's amendment or termination are not fiduciary decisions. *See Hughes Aircraft Co. v. Jacobsen*, 525 U.S. 432, 443-44 (1999) (when employers adopt, modify, or terminate welfare plans, "they do not act as fiduciaries, but are analogous to the settlors of a trust.").

Under the *Mett* approach, "where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity," the exception applies. *Mett*, 178 F.3d at 1064. But, "where a plan fiduciary retains counsel in order to defend herself against the plan beneficiary," the

4

...

exception does not apply.  *Id.*

> The general test is that "when the interests of the ERISA plan fiduciary and the plan beneficiaries have diverged sufficiently such that the fiduciary ... [is acting] in its own interest to defend itself against the plan beneficiaries, then the attorney-client privilege remains intact." *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 497 (M.D.N.C.2008) (emphasis added). The interests of plan participants and plan administrators undoubtedly diverge sufficiently upon the final denial of an administrative claim or upon the initiation of litigation. See, e.g., *Geissal v. Moore Medical Corp.*, 192 F.R.D. 620, 625-26 (E.D.Mo. 2000) (ruling post-administrative claim denial advice privileged).

*Allen v. Honeywell Retirement Earnings Plan*, 698 F.Supp.2d 1197, 1201 (D. Ariz. 2010).

Met Life argues that with respect to the four documents to which they claim privilege, their interests and the interests of the plaintiff had sufficiently diverged so that the fiduciary exception does not obviate their protected status.  The court will address that argument after setting forth some facts necessary for resolution of the question.

Moore is an employee of Southern Company Services, Inc., and has lived in Alabama since at least 1996.  In 2003 she enrolled in a group life insurance plan for benefits for her common-law husband, Jamie Moore.  In 2009, Jamie Moore died of lung cancer.  Moore applied for benefits under the plan.

Met Life denied the claim on November 25, 2009, on the basis that the State of Wisconsin, the state in which the common-law marriage was established, does not recognize common-law marriages.  Met Life also informed Moore of her appeal rights.

In response, Moore sent a letter "in regard to  . . . [her] claim." (Pl. Evid. Submission, doc. # 28-13)   On December 18, 2009, a Met Life representative

5

acknowledged receipt of the letter which was characterized as an appeal. "Her appeal to our denial outlines that in Alabama . . . acknowledges common law marriage . . ." (Pl. Evid. Submission, doc. # 28-14)

In a letter inexplicably dated August 12, 2009, Moore was informed that her appeal received on December 14, 2009, was considered and rejected. "After additional review of the claim file, we must uphold the denial of our claim . . ." The basis of the denial was again that Wisconsin does not recognize the validity of a common-law marriage. (Pl. Evid. Submission, doc. # 28-15)

Moore retained counsel who sent to Met Life a letter requesting plan documents and Moore's file. On August 11, 2010, counsel wrote a letter to Met Life, *inter alia* requesting a reconsideration of the denial of her claim. (Pl. Evid. Submission, doc. # 28-18) On August 17, 2010, Met Life representatives exchanged email messages in which it was suggested that counsel's letter be reviewed to determine whether Met Life's denial decision should be changed. On September 10, 2010, a Met Life representative wrote Moore's counsel requesting specific documentation "[i]n order for use to consider your client's claim further . . ." (Pl. Evid. Submission, doc. # 28-20)

On October 18, 2010, Moore's counsel wrote to Met Life stating that if no response was received to the August 11, 2010, letter, Moore would consider that to be a *de facto* denial. (Pl. Evid. Submission, doc. # 28-21) Then, on December 2, 2010, Moore's counsel again wrote Met Life.

On November 22, 2010 we received a letter from MetLife dated November 17, 2010. The letter is unsigned and does not even identify the author of the correspondence. The letter blindly asks for additional information supporting the establishment of a common law marriage relationship when we are presently in the appellate remedy stage of an ERISA claim where the Insurance company and/or claims administrator and/or Plan administrator have denied the claim based upon the fact that Wisconsin law docs not recognize common law marriages.

Let me be very frank: We have spent more than a year trying to obtain the basic document production and then deal with what is without a doubt one of the silliest denials we have seen (even for an ERISA claim.) In order for us to proceed back to the administrative remedy phase we would have to first recognize that the insurance company is setting aside (as a result of our appeal) their initial denial of the claim.

So, if someone would like to finally rule upon Mrs. Moore's appeal we can then proceed to the next step in this matter. In order for a formal ruling to occur, either the company needs to uphold its initial decision or it needs to set aside its initial decision (granting her appellate remedy) and reopen the administrative functions of this case.

Under the Department of Labor standards there is a time period for which these appeals must be decided. We arc going to operate as though there is a *de novo* denial and proceed with the next remedy available to Mrs. Moore if we do not hear from you on or before December 10, 2010.

We have spent a year trying to get the basic document production and trying to have the insurance company and/or Plan administrator and/or claims administrator recognize how damaging and ill-conceived this denial was and remains. For someone to fire off an unsigned letter that doesn't even identify the author asking for additional documentation at this stage is ridiculous. As a practical matter, whoever sent this letter would first have to recognize that Alabama law applies to the claim which would require setting aside of the initial claims decision. Unless that happens, this request is nothing marc than a request for additional documentation that is irrelevant based upon the present rationale for denying the claim.

We have had enough, you should have paid these insurance benefits a year ago. You need to send a check payable for the full amount of benefits plus

> interest to this office payable to Mrs. Janie Moore and her attorneys at SinclairWilliams, LLC.

(Pl. Evid. Submission, doc. # 28-22)

On December 20, 2010, Met Life responded to Moore's counsel.

> We are writing in regard to the above referenced claim for Group Life insurance benefits.  Please accept Our sincere condolences at this time.
>
> We are not considering any further requests for administrative review.  By letter dated November 25.2006, we initially denied your claim for benefits under the Plan.  By letter dated August 12, 2009, we upheld the denial of your claim after considering your request for an administrative review. As indicated in that letter, your administrative remedies under the Plan have been exhausted.  Accordingly, no further appeals will be considered.

(Pl. Evid. Submission, doc. # 28-23)

Approximately five months later on May 17, 2011, and slightly more than two months after this lawsuit was filed, a senior claim examiner of Met Life wrote Moore's counsel again.  In pertinent part, the letter states as follows:

> We write in response to your letter of December 2, 2010 and further to our letter of December 20, 2010. In light of your correspondence, we have conducted a further administrative review. We have examined the entire claim file, including any additional material and information provided with your request for review. For the reasons detailed below, we must again uphold the denial of your client's claim.
>
>                   \*       \*       \*       \*
>
> On November 25, 2009, MetLife denied your client's claim for dependent benefits on the ground that the State of Wisconsin does not recognize common-law marriages, and, therefore, the Decedent was not a Dependent under the terms of the plan. On December 28, 2009, we upheld the denial of your client's claim. (Note that the letter is incorrectly dated August 12, 2009.) In a letter dated August 11, 2010, you explained that, although your client and the Decedent lived in Wisconsin at one point, at all times relevant to this claim they resided in Alabama. Therefore, you stated that Alabama

> law governs whether your client and the Decedent were common-law spouses.
>
> MetLife agrees that Alabama law, not Wisconsin law, governs the issue whether a common-law marriage existed. Although we never explicitly withdrew our initial denial, which was erroneously based on Wisconsin law, in letters to you dated September 10 and November 17, 2010, we agreed to reopen the record and consider "any additional documents that you feel would help us in our review of the common-law marriage relationship" under Alabama law.  Despite our repeated requests, your client has provided no additional documentation. As a result, there is insufficient evidence in the record to substantiate the existence of a common-law marriage under Alabama law. Because Ms. Moore has not established that the Decedent was an eligible dependent under the Plan, dependent life benefits are not payable.
>
> Consequently, we must again uphold our denial of your client's claim.
>
> Your client is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits. You have the right to bring a civil action under Section 502(a) of ERISA.
>
> Notwithstanding the above and the fact that the claim is now in litigation, MetLife will be pleased to consider any documentation your client might wish to submit to support her assertion that she and the Decedent had a valid common-law marriage under Alabama law.

(Pl. Evid. Submission, doc. # 28-25)

One of the documents at issue presents an easy call.  It is a memo written on September 9, 2010, well before this action commenced.  Even though Moore had retained counsel by the time this document was authored, that fact alone is insufficient to demonstrate that the interests of Moore and Met Life had diverged.  *See Asuncion v. Metropolitan Life Insurance Co.*, 493 F.Supp.2d 716, 722 (S.D. New York 2007).  The

9

document itself addresses questions which are plainly about administration of the Plan. This document shall be produced.

The remaining three documents present a more difficult question. All of them were written after this lawsuit commenced on March 11, 2011. It is tempting to take the easy path devoid of analysis and use the filing date as a date on which the interests of Met Life and Moore diverged such that the fiduciary exception does not apply. However, the facts of this case, especially the actions of Met Life, make the easy path unacceptable.

Met Life's May 17, 2011, letter set forth above (Pl. Evid. Submission, doc. # 28-25) shows that even after litigation commenced Met Life still was considering administratively Moore's claim for benefits. "We have examined the entire claim file, including any additional material and information provided with your request for review. For the reasons detailed below, we must again uphold the denial of your client's claim." *Id.* "[A] plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents." *Varity Corp.,* 516 U.S. at 511. The letter shows on its face that even after litigation commenced, Met Life was making a determination about Moore's entitlement to benefits. That is a fiduciary act. Moreover, the contents of the three documents show that they are concerned with the benefit determination decision embodied in the May 17, 2011, letter. There is nothing in the three documents indicating that the concern of the authors' was the fiduciary in any personal capacity. The advice sought was on a matter

of plan administration. Thus, the remaining three documents listed on the privilege log shall be produced. Accordingly, it is

ORDERED that the motion to compel (doc. # 39) be and is hereby GRANTED and that on or before July 18, 2011, Met Life shall produce to the plaintiff the four documents listed on the privilege log.

Done this 13th day of July, 2011.

    /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE