IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| JANIE MOORE, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|    v. | ) | 2:11cv170-MHT |
| | ) | (WO) |
| METROPOLITAN LIFE | ) | |
| INSURANCE CO.; et al., | ) | |
| | ) | |
|    Defendants. | ) | |

<u>OPINION</u>

Plaintiff Janie Moore filed this action against
defendants Metropolitan Life Insurance Company; Southern
Company Services, Inc.; and Group Life Insurance Plan,
Dependent Life Benefits for Southern Company Services,
Inc., and Associated or Affiliated Companies, claiming a
violation of the Employee Retirement Income Security Act
of 1974 ("ERISA"), 29 U.S.C. §§ 1001, <u>et seq</u>. and seeking
to recover benefits pursuant to 29 U.S.C. § 1132(a)(1).
Jurisdiction over Ms. Moore's federal claim is proper
under 28 U.S.C. § 1331 (federal question).  This case is
currently before the court on a review of the insurance

company's denial of benefits to Ms. Moore.  For the reasons that follow, the court holds that Ms. Moore is entitled to benefits.

## I.

Ms. Moore worked for Alabama Power Company, a division of defendant Southern Company.  As an employee, she participated in a dependent-life-benefits-group-insurance plan.  Metropolitan Life serves as both the plan's administrator of claims as well as the payor of benefits.

The plan documents state that a claimant must submit proof satisfactory to Metropolitan Life to get a benefit under the plan.  The plan defines "spouse" as "your lawful spouse," and the plan administrator has "discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the Plan." Claims File - Part Two (Doc. No. 57-4) at 38.  The plan

states that any interpretation made under its discretionary authority shall have effect unless it was arbitrary and capricious.  Id.

In 2003, Ms. Moore enrolled in the plan to secure $ 50,000 in dependent-life-insurance coverage for her common-law husband, Mr. Moore.  In September of 2009, Mr. Moore died of lung cancer.  After his death, Alabama Power submitted a claim for Ms. Moore to Metropolitan Life certifying that she had enrolled and had certifiable coverage and that Mr. Moore was her spouse.  Claims File - Part One (Doc. No. 57-1) at 2-5.

As part of the claims process, Ms. Moore completed a common-law marriage questionnaire for Metropolitan Life.  Id. at 14-23.  On the questionnaire, she listed the address of the couple's shared rented residence, date the marriage began (1985), and the location of first cohabitation (Wisconsin).  She also provided the names and contact information of three people who would affirm that they knew the Moores as husband and wife (of whom

3

two had known the Moores for 23 years).  She indicated
that both she and Mr. Moore had listed "single" as their
marital status on the last federal income-tax return.
She provided the names and personal information of the
three children the couple had conceived and raised
together.  She left three questions blank:  those
requesting information for joint checking, savings, and
investment accounts.

Ms. Moore also voluntarily attached three documents
to the questionnaire: an insurance policy from 2004 where
Mr. Moore listed her as his spouse, a birth certificate
for one of their children showing both Mr. and Ms. Moore
as the parents, and a program from the decedent's
funeral.  After Ms. Moore sent all of this information to
Metropolitan Life, she received a letter denying her
claim.

In November 2009, Metropolitan Life notified Ms.
Moore that, based on the documentation in her file, her
claim was denied.  Id. at 27-28.  The initial denial

4

letter states that "documentation within the claim file acknowledges that yourself [sic] and Mr. Moore were Common-Law spouses." Id. at 27. The insurance company explained that, because the Moores' cohabitation began in Wisconsin--a State that does not recognize the validity of common-law marriage--it was denying the claim.

Ms. Moore appealed the decision in December 2009. Id. at 29. In her appeal letter, she stated that, although the Moores' cohabitation began in Wisconsin, they had been residing together permanently in Alabama since 1995 and thus did have a common-law marriage under Alabama law. Later that month, Metropolitan Life upheld its adverse-claim determination reiterating its earlier claim that: "Wisconsin, the state in which your common-law marriage was established does not recognize the validity of common-law marriage. Therefore, based on the record before MetLife, we denied your claim on November 25, 2009." Id. at 34-35. The insurance company

5

then addressed Ms. Moore's statement that it had applied the wrong State's laws, writing: "Although Alabama does recognize common-law marriage, you have not provided our office with <u>any</u> documentation to substantiate that a common-law marriage existed.  Therefore, based on the record before MetLife, we uphold our denial of your claim." Claims File - Part Two (Doc. No. 57-1) at 35 (emphasis added).

In August 2010, Ms. Moore again wrote Metropolitan Life requesting reconsideration of its denial.  Claims File - Part Two (Doc. No. 57-2) at 4-5.  She reasserted that Alabama--not Wisconsin--law applied and supplemented the items already submitted by laying out that the Moores had lived together as husband and wife for more that two decades.  She reasserted that the couple had resided together permanently in Alabama since 1995, holding themselves out as married to those who knew them (she took his surname) and raised three children together (who all took the Moore name as well).

Without repudiating its earlier denial of benefits based on Wisconsin law, Metropolitan Life wrote to Ms. Moore requiring documents that it claimed could possibly substantiate a common-law marriage. Id. at 14. The insurance company required submission of at least two of the following three items: (1) documentation of a joint lease or deed; (2) documentation showing joint bank accounts, credit cards, or other investments; (3) a copy of federal-tax returns showing joint filing.

In December 2010, Ms. Moore notified Metropolitan Life that, absent a repudiation of its decision based on Wisconsin law or a final ruling on the appeal, she would not submit any more information. Id. at 26-27. The insurance company responded that same month with a letter stating that she had exhausted her administrative remedies under the Plan and that it would consider no further appeals. Id. at 31.

7

After litigation began in this case, Metropolitan Life conceded that Alabama law governs the couple's relationship.  <u>Id</u>. at 33-34.

## II.

Ms. Moore challenges Metropolitan Life's denial of her claim for spousal-death benefits.  She argues that she had a valid common-law marriage under Alabama law and that the insurance company erred in denying her spousal-death benefits.  Metropolitan Life claims that Ms. Moore failed to submit satisfactory proof of a common-law marriage.  The insurance company argues that its decision was correct, reasonable, and not affected by a conflict of interest.

### A. ERISA Standard of Review

This court must determine whether a reasonable basis existed for the ERISA plan administrator's benefits decision.

The court uses a modified version of the test articulated in <u>Williams v. Bell South Telecomm., Inc.</u>, 373 F.3d 1132, 1137-38 (11th Cir. 2004). A court reviewing an ERISA-plan benefit denial must:

> "(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is 'wrong' (i.e. the court disagrees with the administrator's decision); if it is not, end judicial inquiry and affirm the decision.
>
> "(2) If the administrator's decision in fact is 'de novo wrong,' then determine whether he was vested with discretion in reviewing claims; if not end the judicial inquiry and reverse the decision.
>
> "(3) If the administrator's decision is 'de novo wrong' and he was vested with discretion in reviewing claims, then determine whether 'reasonable' grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> "(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> "(5) If there is no conflict, then end
> the inquiry and affirm the decision.
>
> "(6) If there is a conflict of
> interest, the conflict should merely
> be a factor for the court to take into
> account when determining whether an
> administrator's decision was arbitrary
> and capricious."

Blankenship v. Metropolitan Life Ins. Co., 644 F.3d 1350, 1355 (11th Cir. 2011); see also Capone v. Aetna Life Ins. Co., 592 F.3d 1189, 1195-96 (11th Cir. 2010) ("[T]he Williams methodology remains intact except for the sixth step.").

In other words, a denial of plan benefits is reviewed de novo unless the plan states otherwise. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where the plan provides discretionary authority to the administrator, an abuse-of-discretion standard is appropriate. Id. at 111; see also Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008). Review of the administrator's denial of benefits is limited to consideration of the material available to the

administrator at the time it made its decision.   See

Jett v. Blue Cross & Blue Shield of Ala., 890 F.2d 1137,

1140 (11th Cir. 1989).


    B.  Discussion

    This   court   first   examines   whether   the   plan

administrator's benefits-denial decision is "wrong."

Blankenship, 644 F.3d at 1355.   Although Metropolitan

Life based its preliminary denials on Wisconsin law,

Moore argues--and the insurance company now concedes--

that Alabama law applies to the determination of whether

the Moores had a valid common-law marriage. As such,

this   court   looks   to   Alabama   substantive   law   in

determining whether the Moores had a common-law marriage

under Alabama law.

    Alabama  has  recognized  common-law  marriage  since

1869.   Campbell's Adm'r v. Gullatt, 43 Ala. 57, 59

(1869).   A party seeking to prove a common-law marriage

must   establish   her   claim   by   clear   and   convincing

11

evidence.  Lofton v. Estate of Weaver, 611 So. 2d 335,
336 (Ala. 1992).  In Alabama, recognition of common-law
marriage requires proof of "(1) capacity; (2) present,
mutual agreement to permanently enter the marriage
relationship to the exclusion of all other
relationships; and (3) public recognition of the
relationship as a marriage and public assumption of
marital duties and cohabitation." Boswell v. Boswell,
487 So. 2d 479, 480 (Ala. 1986).

Whether the essential elements of a common-law
marriage exist is a question of fact.  Stringer v.
Stringer, 689 So. 2d 194, 195 (Ala. Civ. App. 1997)
(citing Johnson v. Johnson, 120 So. 2d 739, 740 (Ala.
1960)).  Whether the parties had the intent, or the
mutual assent, to enter the marriage is also a question
of fact.  Id. at 195.  "Each case must be determined on
its own particular facts, having regard to the
situations of the parties and their status in life.  A
pertinent inquiry is to determine the attitude of the

12

parties with respect to marriage and the common law relationship." <u>Etheridge v. Yeager</u>, 465 So. 2d 378, 380 (Ala. 1985) (quoting <u>Goodman v. McMillan</u>, 61 So. 2d 55, 59 (Ala. 1952)).

With these standards in mind, this court turns to the first element: capacity.  Alabama courts have held that parties do not have the capacity to marry if they are of unsound mind, are already married, or are underage.  <u>See</u>, <u>e.g.</u>, <u>Beck v. Beck</u>, 246 So. 2d 420, 425 (Ala. 1971) (unsound mind); <u>Steele v. Steele</u>, 522 So. 2d 269, 270 (Ala. 1988) (already married); <u>Adams v. Boan</u>, 559 So. 2d 1084, 1086-87 (Ala. 1990) (underage).  There is nothing in the record to indicate that either Mr. or Ms. Moore lacked capacity.

The second element is a present, mutual agreement to enter permanently the marriage relationship to the exclusion of all other relationships.  <u>Boswell</u>, 487 So. 2d at 480.  No particular words of consent, nor proof of words of consent, are required.  <u>See</u> <u>Beck</u>, 246 So. 2d at

13

425.    An    agreement    may    be    inferred    from    the
circumstances.  <u>See</u> <u>Moore v. Heineke</u>, 24 So. 374, 378-79
(Ala. 1898), <u>overruled on other grounds by</u> <u>Alexander v.</u>
<u>Gibson</u>, 57 So. 760 (Ala. 1912).  If the couple consents
and rears children together and others recognize them
through their declarations and conduct as being married,
a trier of fact may infer that a marriage exists.  <u>Id</u>;
<u>see also</u> <u>Sloss-Sheffield Steel & Iron Co. v. Watford</u>, 17
So. 2d 166 (Ala. 1944).

        The same behavior that evinces agreement to marry
may also satisfy the third element: public recognition
of the relationship as a marriage and public assumption
of marital duties and cohabitation.  <u>Crosson v. Crosson</u>,
668 So. 2d 868, 870 (Ala. Civ. App. 1997).  To prove
this third prong, Alabama courts have looked to many
factors.  <u>See</u>, <u>e.g.</u>, <u>Cross v. Rudder</u>, 380 So. 2d 766,
773 (Ala. 1979) (man's reliance on advice of lawyer that
he had common-law marriage with the mother of his
children was an indication man considered himself

married); <u>Adams v. Boan</u>, 559 So. 2d 1084, 1086 (Ala. 1990) (sharing of household expenses); <u>Copeland v. Richardson</u>, 551, So. 2d 353, 355 (Ala. 1989) (maintained joint accounts); <u>Crosson</u>, 668 So. 2d at 871 (referred to or introduced each other as spouse, filed joint-tax returns); <u>Aaberg v. Aaberg</u>, 512 So. 2d 1375, 1377 (Ala. 1987) (used the same surname); <u>Downs v. Newman</u>, 500 So. 2d 1062, 1063 (Ala. 1986) (parties' own designations of themselves on documents); <u>Mills v. Bose</u>, 435 So. 2d 1264 (Ala. 1983) (reared children together).  But the most crucial part of establishing this third element is that others in the public recognize them as husband and wife. <u>See</u>, <u>e.g.</u>, <u>Vinson v. Vinson</u>, 69 So. 2d 431, 432, (Ala. 1953) (finding "no proof that [the parties'] neighbors or friends knew of them as husband and wife"); John B. Crawley, <u>Is the Honeymoon over for Common-Law Marriage: A Consideration of the Continued Viability of the Common-Law Marriage Doctrine</u>, 29 Cumb. L. Rev. 399, 409-10 (1999).

As to the present case, Metropolitan Life argues that Ms. Moore failed to provide sufficient documentation to substantiate that a common-law marriage existed.  This court disagrees.

The court has analyzed the evidence in the administrative record that Metropolitan Life possessed regarding Ms. Moore's claim from the time she filed for dependent-benefits coverage to the time the administrative remedies were exhausted.  The information Ms. Moore submitted to Metropolitan Life states that she and Mr. Moore cohabitated for over 24 years, the last 14 of which were in Alabama.  The Moores reared children together.  They held themselves out as husband and wife; she took his name.  They also listed each other as spouse on some, but not all, documents.  Furthermore, Ms. Moore provided the names of three individuals who would testify that they knew the couple as husband and wife.

16

The standards for common-law marriage in Alabama, weighed with the documentation Ms. Moore provided to Metropolitan Life, lead this court to conclude that the two had sufficient capacity, agreement, and public recognition to establish a common-law marriage. The insurance company is quick to point out that there were inconsistencies in the way the Moores characterized their marital status and argues that this undermines Ms. Moore's claim to benefits. However, these instances are actually telling. Ms. Moore did not see herself as "married," but rather as "common-law married." When she was presented with a choice between married or single, she listed single. When given the option to choose "other," she always chose "other" and wrote out to the side, "common-law married." While this case would be even more clear-cut if Ms. Moore had consistently listed "married," "once a couple is married by common-law, subsequent representations of a single status do not invalidate the marriage by common law anymore than such

representations would invalidate a marriage by ceremony." See Matter of Estate of Stodola, 519 N.W. 2d 97, 100 (Iowa Ct. App. 1994) (citing In re Estate of Fisher, 176 N.W. 2d 801 (Iowa 1970)).  In addition, to fault Ms. Moore, who is not learned in legal niceties, for drawing a distinction between common-law married and just married is not only to exalt form over substance, it suggests an unsavory relish in the use of the petty against her.

Because Metropolitan Life's decision was de novo "wrong" under the first step of the modified Williams test, the next step is to determine whether the insurance company was vested with discretion in reviewing claims.

The parties dispute whether Metropolitan Life had discretionary authority to construe the plan's terms. Ms. Moore argues that the plan did not expressly grant the insurance company discretionary authority to make eligibility determinations or construe the plan's terms.

18

Her argument misses the mark. The plan explicitly states that the plan administrator "shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." Benefit Plan - Part Two (Doc. No. 57-4) at 38.

Furthermore, the Eleventh Circuit Court of Appeals has held that language requiring submission of proof "satisfactory to" an administrator confers discretionary authority on the administrator. See, e.g., Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1233-34 (11th Cir. 2006) (holding that language requiring the claimant to "submit satisfactory proof" to an administrator conferred discretionary authority on the administrator). Metropolitan Life's plan documents state that, when filing a claim for benefits, Ms. Moore must submit "proof" "satisfactory to" the insurance company. Benefit Plan - Part Two (Doc. No. 57-4) at 7, 31.

Thus, under the plan, Metropolitan Life did have discretion to "interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." Id. at 38. Because the administrator's decision is "de novo wrong" and it was vested with discretion in reviewing claims, this court moves on to step three to determine whether "reasonable" grounds supported Metropolitan Life's decision. In other words: Was the insurance company's decision arbitrary and capricious?

The parties dispute two issues surrounding the reasonableness of Metropolitan Life's decision: which decision is reviewable and whether sufficient evidence had been submitted for a proper determination.

Metropolitan Life's first reason for denying Ms. Moore's claim was that her marriage was invalid because her and Mr. Moore's cohabitation began in 1985 in Wisconsin, a State that does not recognize common-law marriage. Even after Ms. Moore notified the insurance

company that the couple had resided in Alabama since 1995 and Alabama law applied, the insurance company upheld its initial denial based on Wisconsin law. Ms. Moore argues that it is inexcusable that Metropolitan Life, having been made aware of its error in choice of law, would continue to insist on an untenable position. It is the ultimate "decision" that a court must affirm or reverse, but a full and fair review includes "a review that takes into account all documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iv). Consideration of the full administrative record is essential because the insurance company's final decision is the result of multiple frivolous denials and the creation of a record distorted by its admittedly erroneous assertion that Wisconsin law applied. Metropolitan Life's repeated references to Wisconsin

law--even after it was aware that Ms. Moore claimed
Alabama law applied--raise concerns about its
willingness to review fairly Ms. Moore's file.   This
court, therefore, cannot look at the insurance company's
final decision in a vacuum.

Metropolitan Life's second argument is that Ms.
Moore failed to satisfy the "public recognition" prong
of the Alabama common-law-marriage test.   After her
second appeal, the insurance company notified her that,
pursuant to the insurance company's own policies and
procedures, she must provide two of three specific
documents to substantiate her marriage.   While a joint
lease or deed, joint bank accounts, credit cards or
other investments, or a jointly filed federal-tax return
may be considered as circumstantial evidence of a
common-law marriage, they are not a <u>sine qua non</u> under
Alabama law for any marriage.   In other words, Alabama
law does not <u>restrict</u> proof to two of the three and only
two of the three.

**22**

The court finds this particular list of three documents troubling for several reasons.  First, the items required in this list were already requested in the common-law questionnaire that Ms. Moore completed. Furthermore, these documents that Metropolitan Life deemed necessary for Ms. Moore to produce represent only seven questions on a 26-question survey and are not identified as requisite, or even of increased import. Second, Ms. Moore had already responded that she rented her home.  The questionnaire asked for a copy of the lease _if_ it showed joint leasehold.  Ms. Moore's omission of a copy of the lease points to the fact that it likely did not show joint leasehold and thus would not have satisfied Metropolitan Life, even if provided. Next, there were only three questions on the entire questionnaire that Ms. Moore left blank: those requesting information for joint checking, savings, and investment accounts--the precise information Metropolitan Life determined to be required.  Last, the

23

third option for proving a common-law marriage to
Metropolitan Life was marital status on the last federal
income-tax return--an answer Ms. Moore had already
provided.  The insurance company, in requiring two out
of three of these categories to be submitted and
satisfied, demanded financial entanglement of spouses
that is not even required for ceremonially married
couples.  Furthermore, the insurance company's responses
to Ms. Moore show that it ignored evidence that was
already in hand.

While Metropolitan Life may require proof of a
common-law marriage to avoid fraudulent claims, it may
not use its discretionary authority to require evidence
to establish that the claimant is "legally" entitled to
recover damages when Alabama law itself does not require
that same evidence to prove legality.

The Supreme Court of Alabama has examined heightened
corroborative-evidence requirements in insurance
contracts.  In Walker v. GuideOne Specialty Mut. Ins.

Co., the Alabama Supreme Court examined an insurance company's denial of benefits under an uninsured-motorist statute.  834 So. 2d 769 (Ala. 2002).  The court held that, where the insurance company's corroborative-evidence requirement contractually raised the burden of proof higher than it was under Alabama law, it was void and unenforceable because to hold otherwise would permit the insurance company to alter Alabama law.  Id. at 773. The court also stated that, if the insured was "legally entitled" under Alabama law, the insurer could not "establish an evidentiary hurdle of corroborative evidence to bar legally entitled [individuals] from recovery ... in its policy." Id.  The Supreme Court of Alabama recognized that, while the insurance company had a valid desire to protect against fraud, neither the court nor the insurance company could impose a heightened requirement that the legislature did not deem the situation to warrant the requirement.  Id. at 774.  While the uninsured-motorist provision in Walker was in a

25

statute and common-law marriage in Alabama is by its very definition created by the judiciary, this court sees no basis for creating a new common-law-marriage requirement under Alabama law.  The effect is the same.

Neither this court, nor Metropolitan Life can read into Alabama law a common-law-marriage requirement that simply is not there.  The insurance company may interpret the terms of its plan, but it may not rewrite the laws of Alabama.  The terms of Ms. Moore's plan stated "lawful spouse." Under Alabama law, Mr. Moore was Ms. Moore's lawful spouse.  The insurance company's decision to restrict the documents that may establish a common-law marriage in Alabama is unreasonable.

Because Metropolitan Life's basis for denial was arbitrary and capricious, this court need not reach the issue of whether the insurance company operated under a conflict of interest.  As such, the insurance company's decision is reversed, and Ms. Moore should obtain full access to benefits under the plan.

\*   \*   \*

An appropriate judgment in favor of Ms. Moore and against Metropolitan Life and the other defendants will be entered.

DONE, this the 10th day of June, 2013.

     /s/ Myron H. Thompson     
UNITED STATES DISTRICT JUDGE